MOATEN *v.* COLUMBIA COTTON OIL COMPANY.

4-4391

Opinion delivered November 2, 1936.

98

*Lawrence E. Wilson,* for appellant.

*McKay & McKay,* for appellee.

HUMPHREYS, J. Appellant brought suit in the second division of Ouachita county circuit court against appellee to recover $4,000 as father and next of kin of Felton Moaten, deceased, and $2,500 for the benefit of the estate of his intestate, on account of pain and suffering, for injuring and killing the said Felton Moaten, through the alleged negligence of its servant, W. L. Carson.

Appellant filed an answer denying that W. L. Carson was its servant, but stating that he was an independent contractor; and also denied that said Carson injured and killed Felton Moaten.

The cause was heard upon the pleadings and testimony adduced by the respective parties, at the conclusion of which the court instructed a verdict for appellee, and, based thereon, dismissed appellant's complaint, from which is this appeal.

Only two questions are raised on this appeal, the first being that the court erred in finding that the undisputed evidence showed that W. L. Carson was an independent contractor and not a servant of appellee; and the other being that the court erred in finding that there was no substantial evidence showing that W. L. Carson's truck collided with the car in which Felton Moaten was riding when he was injured and killed.

(1) The only witness introduced by appellant relative to the relationship between W. L. Carson and appel-

lee was W. L. Carson, himself, who testified, substantially, as follows:

"On the 14th day of March, 1933, I carried a load for the oil mill to Little Rock and brought a load back for the fertilizer plant. I passed over the highway between Camden and Fordyce in the afternoon coming back to Magnolia. I have been doing truck hauling for them off and on whenever they had hauling they would let me have ever since 1925. I own my own truck and never drove a truck belonging to the company. I was operating my own truck on that day and carried a load of meal up there and delivered it to a fertilizer plant in Little Rock, and brought a load of acid phosphate back and delivered it to appellee at Magnolia. Appellee employed me to make the trip up there. It paid me by the ton. It paid me so much a ton for making that trip. If I made a trip to some other place they paid me a different amount, owing to the mileage. I made a separate price on each trip. At that time, I was engaged in the general trucking business in Magnolia and hauling for any one that had a load anywhere they wanted me to go. I was not in the employ of the cotton mill any more than any one else who would give me hauling to do. I made this haul for appellee under a verbal contract. They asked me to carry the meal to Little Rock, and asked me to bring the acid phosphate back, which I did. They did not direct me the manner in which I should carry it, or the stops I would make, or the route I would take. All they asked me to do was to deliver the meal there and bring the other back. I don't remember now the price they paid me per ton for this work. Curtis Yates was driving the truck and I was in the front seat with him. The day I made this trip they did not call me, I was hauling regularly there every day at that time; that was a busy part of the season and in the spring of the year, and they gave me hauling nearly every day. When I went there I did not know whether I would get any hauling to do until I got to the mill."

This court held, in the case of *Moore Lumber Co.* v. *Starrett,* 170 Ark. 92, 279 S. W. 4, that the vital test in

determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the control of the employer, he is a servant; if not under such control, he is an independent contractor. An independent contractor is one who, exercising an independent employment, contracts to do a certain piece of work according to his own methods, and without being subject to the control of his employer, except as to the result of the work.

Applying this rule to the testimony in the instant case, it is at once apparent that Carson was an independent contractor and not a servant of appellee. The contract between Carson and appellee was to the effect that Carson should haul, in his own truck, a load of meal to Little Rock and deliver it to a certain firm and bring a load of acid phosphate back, for which appellee agreed to pay him so much a ton. Appellee reserved no control over Carson, but he was left to perform the services according to his own methods. Appellee did not designate the route he should take, the time in which he should make the haul, or the stops he might make. The result of the work was the only thing in which appellee was interested or concerned.

(2) We have read the testimony carefully in search for some substantial evidence identifying Carson's truck as the truck that collided with the car in which Felton Moaten was riding when he was injured and killed. There are no circumstances from which it might be reasonably inferred that Carson's truck was the one that collided with the car in which Felton Moaten was riding when injured and killed.

The trial court was, therefore, correct in instructing a verdict in favor of appellee on either or both grounds.

No error appearing, the judgment is affirmed.

JOHNSON, C. J., and MEHAFFY, J., dissent.