MACK COAL COMPANY v. HILL.
(9 cases consolidated)

4-6783                              162 S. W. 2d 906

Opinion delivered June 1, 1942.

408

*Jack Smallwood, Harper & Harper* and *Warner & Warner,* for appellants.

*G. L. Grant* and *Coleman, Mann, McCulloch & Goodwin,* for appellees.

GRIFFIN SMITH, C. J.   Nine claims allowed by Workmen's Compensation Commission were appealed to Sebastian circuit court for the Greenwood district, or to Logan circuit court for the Northern district. All were affirmed. This court was then appealed to. By agreement the causes were consolidated.

Correct determination of the amount due each claimant is the issue.[1]

---

[1] No. 8783.—This is an appeal by Mack Coal Company from a judgment of Logan circuit court affirming the commission's award of $19.03 per week in favor of Inez Hill, wife of Frank Hill, the latter having been killed December 5, 1940.   There was an additional allowance of $175 covering burial expenses.

Section 12 of Act 319, approved March 15, 1939, referred to the people and approved November 5, 1940, is shown in the margin, the section appearing as a single paragraph.[2]

No. 6806.—Ralph Walker, while employed by Mack Coal Company, was killed January 3, 1941. He lived with his father, Tom Walker, and with his stepmother, Mrs. Ethel Walker, who claimed they were dependents. The commission's order was that payments of $6.61 per week be made to each of the claimed dependents during continuance of such status, not to exceed 450 weeks.

No. 6807.—Because of injuries to his back, received December 18, 1940, while working for Boyd Excelsior Operating Company, Vess Gosnell was awarded weekly compensation of $17.90, this being 65 per cent. of a determined average weekly wage of $27.55.

No. 6808.—Joseph R. Hill was killed December 15, 1940, while employed by Peerless Coal Company. The commission's award was $15.15, this being 55 per cent. of a determined average weekly wage of $26.45. There was an additional award of $200 in favor of the decedent's estate, covering burial expenses. [But see error referred to in body of opinion].

No. 6809.—Dewey Dacus was killed January 3, 1941, while employed by Mack Coal Company. The commission awarded $17.19 per week to Jewel Mabel Dacus and the decedent's three children. The further sum of $250 was allowed for funeral expenses.

No. 6810.—In this case the commission awarded $10.01 per week in favor of George William Koch against K. & S. Coal Company. Claimant's right leg was fractured June 9, 1941. The amount allowed represented 65 per cent. of an average weekly wage of $15.40, payments to be made during continuance of disability, subject to limitations fixed in the Act.

No. 6811.—The commission awarded $17.90 per week in favor of John Sherman Hicks and against Carbon Coal Co. Payments were ordered to be made for fifteen weeks and three days for temporary total disability, and twenty weeks for permanent partial disability. Hicks' left hand was injured.

No. 6812.—Coy Highfield's right leg was fractured and his knee bruised August 11, 1941, while he was employed by New Shockley Coal Company. The commission determined that his average weekly wage was $31.45 and allowed $20 per week during disability, subject to restrictions of the Act. There was the further order that all medical and hospital bills in connection with the injury be paid.

No. 6813.—Ira Elzo Bailey was fatally injured March 13, 1941, while employed by Great Western Coal Company. An award of $20 per week was made, together with $250 for burial expenses. It was determined that Bailey's average weekly wage was $48.45. Of this sum 35 per cent. was for benefit of the widow, and 10 per cent. on account of each of two minor dependents. Maximum payable under the Act is $20 per week.

[2] Section 12. *Determination of Wages:* Except as otherwise specifically provided, the basis for compensation under this Act shall be the average weekly wages earned by the employee at the time of the injury, such wages to be determined from the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury divided by fifty-two; but if the injured employee lost more than seven days during such period, although not in the same week, then the earnings for the remainder of such 52 weeks

As stated by appellants, the principal controversy involves methods employed by the commission and approved by the circuit courts in determining "average weekly wages."

Frank Hall, Ralph Walker, Joseph R. Hill, Dewey Dacus, and Ira Elmo Bailey were killed. Vess Gosnell, George William Koch, John Sherman Hicks, and Coy Highfield, were injured. All were members of United Mine Workers. Their union had contracts with the various coal companies which provided for a maximum five-day week. In most instances contracts called for a fixed daily wage, but in some instances pay was on a tonnage or yardage basis.

What is the meaning of *average weekly wages?*

By what process of reasoning, or by what construction, must we gather from § 12 the legislative intent?

A correct assize is of great importance to all of the litigants.

Subsection (h) of § 2, Act 319, defines wages as the rate at which service is recompensed under the contract in force at the time the accident occurs, including the reasonable cash value of board, rent, housing, lodging, or similar advantage received from the employer; also gratuities received in the course of employment from others than the employer, if bestowed with the employer's knowledge.

Calling attention to introductory words used in § 12— "except as otherwise specifically provided, the basis for

shall be divided by the number of weeks remaining after the time so lost has been deducted. When the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, however, that results just and fair to both parties will thereby be obtained. Where by reason of the shortness of time during which the employee has been in the employment of his employer it is impracticable to compute the average weekly wages by the above method of computation, regard shall be had to the average weekly amount which, during the first fifty-two weeks prior to the injury or death, was being earned by a person in the same grade, employed at the same or similar work in the community. Wherever allowances of any character are made to an employee in lieu of wages or specified as part of the wage contract, they shall be deemed a part of his earnings.

compensation under this Act shall be the average weekly wages earned by the employee at the time of the injury'' —the commission's opinion is that where an injured employe worked under a definite contract of hire at a definite daily rate for a definite number of hours a day and a definite number of days a week, ''there is nothing left to determine.'' The commission then continued: ''All is known that needs to be known to establish the average weekly wage being earned by the injured employee at the time of the injury.''

And again: ''Where there is no such definite contract of hire or no definite rate or definite number of hours a day or definite number of days a week, then resort must be had to the formulas set out under § 12 to determine the average weekly wage. This would also be true when the injured employee was a piece-worker, working by the ton, yard, cord, article, etc., or where there was a variance in daily wages or similar uncertainties requiring determination''.

Appellants call attention to certain known facts which necessarily attach to the character of work involved. The industry in Arkansas ''. . . is of a peculiar nature. These mines produce coal mainly for domestic consumption in various localities throughout the northern and midwestern states. It naturally follows that extent of the demand . . . governs almost entirely. . . . There is demand for the product only in the colder months. This naturally means that in the spring and summer months there is little or no demand for the product of these mines, and as a result they do not produce for the market during these periods''.

Production ordinarily begins about August 1 and continues until March of the following year. Each mine operates an average of 118 days annually. Union contracts with the operators provide that, because of seasonal slack, a joint board of miners and owners may extend, from five to six, the days composing a week in order, as appellants say, ''. . . that the industry may be able to work at capacity during the season of heavy orders without being penalized through the payment of overtime.''

Another custom peculiar to the industry is the frequency with which workers change from one mine to another, "year in and year out."

Replying to the commission's holding that certain fixed standards must be recognized, appellants argue there was no definite contract of hire, and no definite daily rate for fixed hours. It is conceded the contracts called for a maximum of daily hours, a maximum number of days a week, "and even a maximum number of hours a week, and provide that all time worked in excess of such maximum shall be compensated as overtime".[3]

Certain exceptions appear in Act 319, notably in §§ 13 and 23. That there *are* exceptions, say appellants, is justification for their contention that the phrase, "except as otherwise specifically provided", found in § 12, has reference to departures from § 12; hence, it is stressed, in supplying the exceptions, it was not intended that subsection (h) of § 2 should form the basis of compensation. But, say appellants, even if subsection (h) had been intended as a method of determination, it is not applicable to the instant cases because there is no definite contract of hire, etc.

Beginning with the second word in the first line of the printed Act at page 791, the direction is: ". . . but if the injured employee lost more than seven days during [the fifty-two weeks immediately preceding injury], although not in the same week, then the earnings for the remainder of such fifty-two weeks *shall be divided by the number of weeks remaining after the time so lost has been deducted.*"

It is appellees' belief that this class embraces all injured employes who worked within the period of fifty-two weeks preceding injury, but who lost more than seven days. Argument is that it is immaterial whether work was, or was not, continuous; nor was it important that the injured person worked in consecutive weeks. The total number of days actually devoted to the mas-

---

[3] It is presumed the statement as to overtime is to be read in connection with the contractual provision heretofore mentioned by appellants: that work in excess of five days without overtime shall be determined by a joint board composed of operators and operatives.

ter's service is ascertained in weeks, ". . . and the total earnings for the entire period are to be divided by the number of weeks actually worked." From this, it is submitted, the average weekly wage constituting the basis for compensation is ascertained.

The next class falls within the Act's provision that "When the employment prior to the injury extended over a period of less than fifty-two weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed."

As to this group, it is appellees' thought that total earnings during the period of employment is divided by the time applied, computed in weeks; and this, it is claimed, ". . . gives the average weekly wages, which is the basis for compensation."

We agree with the commission, the circuit courts, and appellees, that under the contracts between operators and United Mine Workers, definite bases of pay were provided; and if work were discontinued because there was no demand for coal during several months in each year, this fact is not to be embraced as authority for applying the largest possible divisor and thus reducing the average wage to a figure far below wages actually received by the miners when they worked.

The Act expressly provides that, as to certain classes, the divisor shall be the number of weeks remaining after time "so lost" has been deducted. The difficulty, therefore, lies in determining what is meant by *lost time,* or time "so lost."

If we accept appellants' reasoning, a worker does not lose time when the mine he is serving, and all other mines in the district, cease operating because of seasonal non-demand for coal.

While § 12, as written, may not be the rubric its authors would desire, the underlying purpose seems to have been to determine basic pay—the amount a worker earned. In case of doubt, recourse is had to the average an employe has earned during a fixed period. But where,

as in the cases here, uniformity prevails, and the worker's capacity to earn is equal to what he did earn when employment was available, it is harsh to apply a strict rule of exclusion, the effect of which is to diminish a known basic rate of pay.

It is argued by appellants that when the number of days an employe has worked (assuming his services were intermittent) are divided by five to correspond with a work week, and the number of weeks has been ascertained, the result is not an "average" because the amount such employe receives per day translated into weeks is the determining unit. It is not always possible to deduce from a writing the clear purpose an author, or a group of composers, had in mind. Whatever the legislative objective may have been, one expression appearing in § 12 rings clear:—"provided, however, that results just and fair to both parties will thereby be obtained." If this sentence be construed as investing the commission with "roving authority," answer is that it applies only to those cases where reasonable men would agree that the method of computing wages defeated the law's obvious purpose.

In Case No. 6783, Hill, as mechanic, received a monthly wage of $150. Inez Hill (wife) was allowed 35 per cent. of the decedent's salary on her own account and ten per cent. for each of two dependent minor children.[4] The result was $19.03 per week, based on 55 per cent. of $34.61 per week.

Ralph Walker, in Case No. 6806, was employed as a coal-breaker at $5.29 per day. His average weekly wage was found to be $26.45. Payments of $6.61 to the decedent's father and an equal amount to his stepmother were directed.

Vess Gosnell, in Case No. 6807, was a machine-runner who received $5.51 per day. The weekly wage was found to be $27.55. The order was that he receive weekly 65 per cent. of such sums, amounting to $17.90.

In Case No. 6808, Joseph R. Hill, a "brusher," received compensation of $5.29 per day. His average

[4] See *Gunnells et al.* v. *Gunnells*, 203 Ark. 632, 158 S. W. 2d 54.

weekly wage was $26.45. The award was 35 per cent. to his wife and ten per cent. to each of two dependent minor children, amounting to $15.15. [Fifty-five per cent. of $26.45 is $14.547. It will be presumed that this slight error of 60 cents will be corrected].

In Case No. 6809, Dewey Dacus, as an ordinary miner, was paid $5.29 per day. The average weekly wage was found to be $26.45. Compensation of $17.19 per week was allowed—35 per cent. to the widow and ten per cent. to each of three children.

John Sherman Hicks (Case No. 6811) received a daily wage of $5.29 as an ordinary miner. His weekly wage was ascertained to be $26.45, of which 65 per cent., or $17.19, was payable.

Ira Elzo Bailey (Case No. 6813) worked part of the time on a tonnage basis, and sometimes on a yardage basis. The commission found that during the period of his employment by New Shockley Coal Company, he earned $756.31 in 78 days, the average daily wage being $9.69.

In Case No. 6810—*Koch* v. *K & S Coal Company*—the injured employe had worked 137 days at 80 cents per ton. A new contract was made, calling for 91 cents per ton. Koch had worked seventeen days under the more favorable terms, earning $52.36, or $15.40 per week. It is contended the award of $10.01—65 per cent. of $15.40—bears no relationship to the average required by § 12 to be determined.

In Case No. 6812—*New Shockley Coal Co.* v. *Highfield*—claimant had worked for $5.29 per day. This contract was superseded by an agreement that daily pay would be $6.29. Highfield had worked five weeks under the new arrangement. The commission determined that his average weekly wage was $31.45, disregarding earnings under the old contract.

Appellants, in presenting their cases, have conveniently abstracted compensation statutes in other states.[5] Exclusive of the term, "except as otherwise specifically

[5] Mississippi, alone of all the states, has no workmen's compensation law.

provided'', the Tennessee statute is comparable to our own. In *White* v. *Pinkerton,* 155 Tenn. 229, 291 S. W. 448, White, a Vanderbilt University student worked six days during the Christmas season. During other periods he worked Saturday afternoon and at night. The lowest weekly wage paid by White's employer was $15, the award being on that basis. In modifying final judgment, the court held it was the law's object to compensate a disabled employe to the extent of fifty per cent. of the amount received for a given number of weeks. It was then said: ''Where the court can see that the application of this rule would be unfair, and evidence has been introduced that would justify us in applying some other rule, we would not hesitate to do so. The court must ascertain the average weekly wages of the petitioner by past earnings, and not what he may earn in the future.''

We do not regard this case as controlling. White was employed incidentally. He was an ''odd time'' worker, helping himself through college, and necessarily an average had to be ascertained as a basis of compensation. See Bragg's.*Quarry* v. *Smith,* 161 Tenn. 682, 33 S. W. 2d 87, 34 S. W. 2d 714. In that case the petitioner had no record of earnings. He was employed loading rock at so much per car. Duty kept him out of doors. During rainy, or very cold weather, he did not work. Although Bragg had been employed by the respondent for several years, testimony was that he worked when it suited him. He had no regular hours for beginning or quitting. In the opinion the expression appears, ''If the work is discontinuous, that is an element that cannot be overlooked.'' The decree was modified by reducing the average weekly wage from $22.50 to $12.50. *Carter* v. *Victor Chemical Works,* 171 Tenn. 147, 101 S. W. 2d 462, and *Wilmoth* v. *Phoenix Utility Co.,* 168 Tenn. 95, 75 S. W. 2d 48, were cited. The Tennessee court said:

''The distinction, given determinative recognition in the Wilmoth case, was that [difference which exists] between loss of time occasioned by chance or accident, such as temporary disability of the employee; and, for example, a temporary breakdown in machinery, or temporary and occasioned interruption or suspension of

operations because of bad weather, inadequate shipping facilities, or limitation on the demand for the products. Workers regularly employed in manufacturing, mining, or outdoor construction, habitually lose time occasionally in the due course of their employment because of such incidental happenings as suggested. These are conditions of such employment, to be expected to arise, and the average earnings of the workers are commonly and naturally affected thereby. His average earnings are necessarily subject thereto.''

An Indiana statute very similar to ours has been construed in its application to miners. *Holton* v. *Jackson Hill Coal & Coke Company*, 101 Ind. App. 231, 198 N. E. 805. Holton had been employed by the company since 1926. He was injured July 7, 1933. The mine was idle from April 1 to September 16, 1932. In the opinion it is said:

"Appellant had no other employment or occupation. The fact that the mine was idle, whatever the cause, did not change the nature or character of appellant's employment as a miner, and that was his employment for 52 weeks immediately prior to his injury.''

As a matter of fact, Holton had been employed only 61 days immediately preceding his injury, or 10.166 weeks. The court held that his average weekly wages was the quotient obtained by dividing $398.74 by $10.166. The coal company's contention was that the amount should be divided by fifty-two. See *Miller* v. *Binkley Mining Company*, 99 Ind. App. 257, 190 N. E. 886.

Under a statute similar to Act 319, the Supreme Court of Alabama held that while Odom worked only 166 days, the applicable divisor was the number of weeks represented by 166 days, and not fifty-two, as the coal company contended. *Odom* v. *Galloway Coal Co.*, 223 Ala. 118, 134 So. 855.

The Compensation Act affords a remedy substituted for a common law right in certain instances, as to which the constitution of 1874 prohibited the legislature from limiting the amount of recovery. Art. 5, § 32.

By Amendment No. 26 the general assembly was given power to enact laws prescribing the amount of compensation to be paid by employers for injuries to or death of employes, irrespective of defenses formerly available to the defendant. Act 319 is remedial and must be construed liberally to effectuate its purpose.

We do not think the commission's construction, as affirmed by Sebastian and Logan circuit courts, is contrary to the statute in its application to the industry affected, in the light of facts showing how the mines were operated. While subdivision (h) of § 2 is merely a definition and does not enlarge the claimant's rights, and § 12 is the so-called yardstick by which compensation is to be measured, we cannot agree that periods of non-operation are not to be counted as lost time, thereby reducing the divisor to the number of weeks remaining, as contrasted with fifty-two.

The most perplexing problem is that presented by claims of injured employes whose rate of pay per day, per week, per ton, or per yard, has been changed, and the increased basis was in force at the time the liability accrued, as in the Koch and Highfield cases.

It is wholly practicable to ascertain the average wages these men received. If the new contract had reduced compensation, Koch and Highfield would have been entitled to include the amount received under the more favorable agreement in arriving at an average. It follows that as to these cases the method of ascertaining average wages was erroneous, and the judgments should be modified as indicated.

We do not think that the commission improperly determined that the father and stepmother were dependents of Ralph Walker; nor were burial allowances incorrectly computed or awarded in any of the cases.

Causes Nos. 6793, 6806, 6807, 6808, 6809, 6811, and 6813, are affirmed.

Causes Nos. 6810 and 6812 must be modified. They are therefore remanded to Logan circuit court where proper judgments will be entered if the commission files

with the circuit court its finding based upon the law as herein declared, and such finding is approved by counsel for appellants and appellees. Otherwise, at the expiration of fifteen days from this date, the mandate will be that the judgments be reversed.