CADDO QUICKSILVER CORPORATION *v.* BARBER.

4-6898                                                    166 S. W. 2d 1

Opinion delivered November 30, 1942.

*J. H. Lookadoo,* for appellant.

*G. W. Lookadoo,* for appellee.

SMITH, J.   This is an appeal from the judgment of the Clark circuit court affirming an award of compensation to appellee to compensate an injury sustained by him while employed in a quicksilver mine operated by appellant. The injury was occasioned by a fall of sixty feet of a bucket in which appellee was being lowered into the mine. His leg was crushed, and an operation was required, the amputation being at a point about six or eight inches below the knee joint.

On September 18, 1941, the following award was made:

"Award

"Respondent will provide claimant with necessary medical attention to affect the healing of his injury and during such period of healing will pay claimant compensation at the rate of $13.36 per week. Claimant is ordered to co-operate in every respect with the respondent and its physicians in an effort to effect a healing of this injury.

"A fee in the amount of $50 is approved for claimant's attorney.

"Respondent will pay the costs. It is so ordered."

This award was made upon the following "Conclusions of Law" made by the Commission:

"Conclusions of Law

"In view of the medical evidence, we are of the opinion that the healing period has not ended and for that reason we do not consider it proper to enter a finding as to the permanent partial disability to the remaining portion of the right leg until the stump has healed. Indeed, it may be necessary to amputate additional portions of the leg, causing the case to fall within a different specific injury classification. This Commission will not enter an award for a specific injury until the healing period has terminated.

"We conclude that it is to the parties' best interests in this matter to order additional treatment so as to effect the earliest possible termination of the healing period and to hold in abeyance, pending the termination of the healing period, any opinion as to a specific injury.

"There is no evidence before this Commission to support claimant's contention that he sustained a permanent injury to his back and nervous system. We conclude, therefore, that any injury he might have suffered to his back and nervous system was of a temporary nature and is no longer present.

"The testimony is to the effect that claimant was working under a contract of hire for 35 cents per hour, 40 hours per week, and 52 1-2 cents per hour, 12 1-2 hours per week at the time of the injury. Accordingly, we conclude that claimant's weekly wage for the purpose of determining compensation is $20.56."

It is first insisted that an appeal was not perfected from this award within the time and in the manner provided and required by law, and that the right of appeal was not restored subsequently by the award made by the Commission on December 16, 1941.

This insistence is sufficiently answered by saying that the first award was temporary and provisional, and was not final nor intended to be so. The award which was final was made in December, 1941, and the appeal to the circuit court was prosecuted within the time and in the manner provided for and required by law, and the

right of appeal from the final award was not lost by the failure to appeal from the temporary and provisional award.

The final award of the Commission from which is this appeal required respondent, the employer, to pay appellee, the injured servant, compensation at the rate of $13.36 per week for 157 1-2 weeks, beginning December 16, 1941. This award was made upon the following "Findings of Fact" and "Conclusions of Law":

## "Findings of Fact

### "1.

"That the parties to this cause are employee and employer, respectively, within the meaning of the Arkansas Workmen's Compensation Law.

### "2.

"That claimant sustained an accidental injury arising out of and in the course of employment on February 2, 1941, which resulted in permanent loss of use of 90 per centum of his right leg.

"Upon the above findings of fact, the Commission bases the following

## "Conclusions of Law

"The medical evidence is to the effect that claimant's right leg was amputated at a point about 6 or 8 inches below the knee joint; that the stump has healed; that there is the usual amount of atrophy of the muscles below the knee joint and in the thigh of the leg; that the patella is severed and the upper and lower segments thereof are separated by 3 or 4 inches; that the condition of the patella interferes with the use of the artificial limb furnished claimant by the employer; and, that claimant's loss of use of the leg is from 85 to 90 per centum. Section 13 (c) (21) of the Workmen's Compensation Act provides that compensation for permanent partial loss or loss of use of a member shall be for the proportionate loss or loss of use of the member, and inasmuch as the

claimant has suffered a disabling injury to the knee as well as the loss of the lower leg, which was amputated between the knee and the ankle, we are of the opinion this provision of the Act is applicable for the purpose of evaluating the claim. On the basis of the medical evidence before the Commission as to the condition of the remaining portion of claimant's leg and our personal observation of claimant, we think that he has suffered a loss of 90 per centum of the use of the right leg, and so hold.

"Section 13 (c) (2) fixes the value of the loss of a leg at 175 weeks' compensation, 90 per centum of which is 157 1-2 weeks' compensation."

Reversal of the judgment of the Circuit Court affirming the award by the Commission is asked upon the following grounds:

"First: That there was no evidence to sustain the Commission in holding that according to the proof the appellee was entitled to $13.36 per week.

"Second: That there was no evidence or law to sustain the Commission in holding that the appellee was entitled to pay 157 1-2 weeks after the healing period.

"Third: That the appellee is in error in its contention that there was a final award made on the 18th day of September, 1941."

What has just been said disposes of appellant's third contention, which we decide in its favor. The decision of the other propositions involves questions of fact.

This case, like the recent case of *Mack Coal Co.* v. *Hill, ante,* p. 407, 162 S. W. 2d 906, arose out of an injury to an employee who was employed in a mine, the injury in each case being sustained in the course of that employment. The case construed our Workmen's Compensation Law (Act 319 of the Acts of 1939, p. 777,) as related to miners engaged in that employment; and we find it unnecessary to review the law of that subject as there stated.

Appellee was injured February 2, 1941, and had at that time been employed by appellant company for a period of six months. His normal pay was 35 cents per

hour for a 40-hour week, and under his contract he was paid time-and-a-half for any labor in excess of those hours. As appears to be quite common in this service, the employment was somewhat intermittent; but this *Mack* case, *supra,* announced the rule to be followed notwithstanding that fact, and we are unable to say that the rule there announced was not applied by the Commission and by the Circuit Court on appeal in the instant case. In any event, there is substantial testimony to support the award and the judgment of the Circuit Court.

We have less uncertainty as to the second assignment of error. As appears from the conclusions of law announced by the Commission upon which the first award was made, recited above, the Commission was in doubt whether "it may be necessary to amputate additional portions of the leg, causing the case to fall within a different specific injury classification." The amputation was below the knee, but appellee requests a second amputation above the knee, this for the reason that his "knee cap has been busted up," and he can bear no weight on the knee cap, which was split in two.

The medical examiner for the Commission reported: *"Present Condition*—The knee joint is not straight, the artificial leg sticks backward, cannot stand weight on leg, end of stump not healed, cannot walk without crutches. Fracture of patella makes it very painful when he tries to walk on the artificial leg. He complains of backache and that he is in a very nervous condition since this accident."

The Commission made no award and allowed no compensation for appellee's nervous condition.

An X-ray expert made the following report: "The distal end of the femur and the upper ends of the bones of the leg are included. There has been an amputation of the leg in the upper third of the leg. There also has been a fracture across the middle of the patella and the fragments are separated for one and three-fourths inches. There is, of course, nonunion of this injury. There is considerable demineralization of the bones of the knee and leg as a result of the injury and of the disuse."

This report, as we understand it, means, in the vernacular, that appellee has practically lost the use of this leg, and the surgeon who performed the operation and a doctor who has attended appellee since the amputation placed the loss at from 85 to 90 per cent of the use of the leg. The Commission fixed the loss at 90 per cent and computed the compensation on that basis. This computation of 90 per cent of the 175 weeks for which the statute provides compensation is 157 1-2 weeks, and compensation was ordered paid for that time. We are unable to say that this finding is unsupported by substantial testimony, and upon a consideration of the whole case, it appears that the judgment should be affirmed, and it is so ordered.