CLARA MAE CARTER, ET AL v. WARD BODY WORKS, INC.

5-4862                                   439 S.W. 2d 286

Opinion Delivered April 1, 1969
[Rehearing denied May 5, 1969.]

*Alonzo D. Camp* for appellants.

*Terral, Rawlings, Matthews & Purtle* for appellee.

J. FRED JONES, Justice.    This is a workmen's compensation case involving two consolidated claims for death benefits brought by the widows of the two decedents.    The question before the Commission was whether the decedents were in the course of their employment as employees of Ward Body Works at the time of their injuries and resulting deaths.    The question before us on appeal is whether there was any substantial evidence to sustain the findings and orders of the Commission.

The Workmen's Compensation Commission found that the decedents were independent contractors and denied the widows' claims for compensation death benefits on that basis.    On appeal to the circuit court the findings and orders of the Commission were affirmed. The widows of the decedents have appealed to this court and designate the following points for reversal:

"That Mr. Sallis and Mr. Carter were employees of Ward Body Works at the time of their deaths, and not independent contractors.

Death of the two men arose out of and in the course of their employment, and the Commission's decision otherwise is not supported by substantial evidence."

The decedents, Richard Sallis and Milton Carter, along with two vacationing Arkansas State Policemen, entered into verbal arrangements with Ward Body Works at Conway, Arkansas, to deliver four new buses to purchasers in and near Los Angeles, California. Each individual was to drive a bus and the drivers were paid

in advance 14 cents per mile for driving the buses to California. They were to be reimbursed the actual cost of gas and oil and any other actual expenses on the buses in transporting them to California. Upon delivery of the buses to the consignees in California, they were to obtain receipts which were to be returned to Ward along with their receipts for gas and oil and any breakdown repairs, or other bus expenses incurred on the trip. After delivery of the buses in California, the drivers were on their own and under no direction or control whatever by Ward.

All four drivers, including the decedents, left Conway on October 9, 1967, and each drove a bus to California, reaching their destination and delivering the buses on October 12, 1967. After delivering the buses in California, the decedents went by plane from Los Angeles to San Francisco where they both visited with Mr. Sallis' son for a couple of days. By prior arrangement the son had purchased a Renault automobile for Mr. Sallis and both decedents were on their way back to Arkansas from San Francisco when they both died as a result of injuries sustained in an automobile accident near Seligman, Arizona.

The question before us on appeal is whether there was any substantial evidence to sustain the Commission and the circuit court in holding that the decedents were independent contractors and not employees of Ward.

The usual test in distinguishing an employee from an independent contractor is set out in *Ozan Lumber Co.* v. *Tidwell*, 210 Ark. 942, 198 S.W. 2d 182, as follows:

> "It has been said in many cases that the vital test in determining whether a person employed to do certain work is an independent contractor, or a mere servant, is the control over the work which is reserved by the employer. Broadly stated the rule is that, if the contractor is under the control of

the employer, he is a servant; if not under such control, he is an independent contractor."

Quoting from 31 C.J. 473, 474, in the *Tidwell* case, this court continued:

"It is impossible to lay down a rule by which the status of men working and contracting together can be definitely defined in all cases as employees or independant contractors. Each case must depend on its own facts, and ordinarily no one feature of the relation is determinative, but all must be considered together. Ordinarily the question is one of fact."

In 99 C.J.S., § 92 is found the following:

"In determining whether a person doing work for another is an employee, within a compensation act, or an independent contractor, although the actual exercise of control is a factor to be considered, the significant or ultimate question is not whether the party for whom the work is being done actually exercises control over the worker, the work, or the manner or method of doing it, or actually directs, instructs, or supervises, but the real question is whether such party has the right, or power, to control, direct, or supervise.

Actual interference by the employer with the work or control is not the test, nor is actual regulation of the details of the work, or the giving of instructions; it is the right to interfere that determines."

In the case of *Moaten* v. *Columbia Cotton Oil Co.*, 193 Ark. 97, 97 S.W. 2d 629, this court said:

"This court held, in the case of *Moore Lumber Co.* v. *Starrett*, 170 Ark. 92, 279 S.W. 4, that the

vital test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the control of the employer, he is a servant; if not under such control, he is an independent contractor. An independent contractor is one who, exercising an independent employment, contracts to do a certain piece of work according to his own methods, and without being subject to the control of his employer, except as to the result of the work."

In the case of *Moore and Chicago Mill & Lumber Co. v. Phillips,* 197 Ark. 131, 120 S.W. 2d 722, holding logging contractors to be independent contractors, this court said:

"By a long line of decisions this court is committed to the universal rule that, where the contractor is to produce a certain result, according to specific and definite contractual directions, agreed upon and made a part of the contract, and the duty of the contractor is to produce the net result by means and methods of his own choice, and the owner is not concerned with the physical conduct of either the contractor or his employees, then the contract does not create the relation of master and servant. This court has consistently accepted and stated the settled rule that even though control and direction be retained by the owner, the relation of master and servant is not thereby created unless such control and direction relate to the physical conduct of the contractor in the performance of the work with respect to the details thereof. *St. Louis, I.M.&S. Ry. Co.* v. *Gillihan,* 77 Ark. 551, 92 S.W. 793; *Moore Lumber Co.* v. *Starrett,* 170 Ark. 92, 279 S.W. 4."

The arrangements made between Ward and the decedents are evidenced by the following testimony. Mr.

Coy McCaskill, transportation manager of Ward, testified as follows:

"Q. Were you contacted ... by a Mr. Sallis with reference to driving a bus to California ...?

A. ... [H]e came up there about October the 7th about two days before they went to California. Said he had a son in California and if we had some buses—

\* \* \*

He said he had a son that lived in California and if we had some buses going out there, he'd like to deliver one and visit him a few days.

I told him, I said, 'Yeah, you can stay as long as you want to if we have some more going in the next short time, why, we'll notify you.' And I said 'After you get the bus delivered, why, you're on your own and you can stay as long as you want to stay.'

\* \* \*

... Mr. Sallis came up with those two State Troopers and I had an extra bus going and he called Mr. Carter back from Little Rock ... he was to come on up to [sic] Little Rock and carry the fourth bus."

An employee of the Arkansas State Police Department, Richard Howard, was the driver of one of the four buses and testified as follows:

"Q. ... what were you to do with the papers that you were given [with the bus]?

A. ... we were to get them signed and bring one of them back to the Ward Body Works in Conway.

Q. ... was there any work which you were to perform at Ward Body Works after you returned back from California?

A. No, ... I was doing this on my vacation.

Q. Did Ward ... give you any instruction about what time the bus was to be delivered in California?

A. No ...

Q. Did they tell you what highways to travel?

A. They suggested what highways we should travel, because we did ask them what route would be the best out there.

Q. Did they give you any certain speeds to drive at?

A. Well, the buses were governed, I believe, at sixty miles an hour.

*  *  *

Q. ... Did they tell you where you were to stop along the way?

A. No ...

Q. Did they tell you where you should eat?

A. No ...

Q. Were you reimbursed for any food expenses or lodging expenses on the way out there, or on the way back?

A. No ...

Q. Did Ward Body Works give you any instructions about what to do after the bus was delivered in San Diego?

A. No ...

Q. Did they tell you when to return to Arkansas?

A. No ...

Q. Did they tell you how to return to Arkansas?

A. No ...

\*    \*    \*

Q. And how did you return to Arkansas?

A. On the Continental Trailway bus.

Q. And when did you arrive in Little Rock?

A. ... on the 14th ...

Q. When were you reimbursed?

A. ... I believe it was almost a week before I went up there because I met my wife and we left to finish my vacation out.

\*    \*    \*

Q. Did you deliver any papers to the Ward Body Works at that time with reference to your trip?

A. ... my gasoline and oil receipts and then a form they had sent out there for me to have signed ... and return to them.''

The record in the case at bar indicates that the decedents were regularly employed by a screen door company in North Little Rock prior to making the trip to California. Mr. Sallis had his former employer wire $75.00 to him in San Francisco before starting on his return trip to Arkansas. The record is not clear as to the decedents' exact employment status when they agreed to drive the buses to California, but the record is clear that they had not worked for Ward at any time

prior to this one trip and that no future work for Ward was contemplated. The record is also clear that the decedents were employed to deliver the buses to consignee in California and that Ward was only interested in, and concerned with, the results.

. . .

It is true that the decedents were required to return to Ward, the receipted copy of invoices for the buses delivered, but this was permitted to be done by mail and personal delivery was not required. We conclude that there was substantial evidence that the decedents were independent contractors and not employees of Ward at the time of their injuries and resulting deaths. Even if the decedents had been employees of Ward within the meaning of the Workmen's Compensation Law, they had gone to San Francisco on personal missions of their own and had not returned within the course of their employment when the accident occurred. The judgment of the circuit court must be affirmed.

Affirmed.