**Richard S. BROWN, Appellant,**

v.

**COOPER CLINIC, P.A., Appellee.**

**No. 83–1369.**

United States Court of Appeals, Eighth Circuit.

Submitted April 22, 1984.

Decided May 21, 1984.

Neal Kirkpatrick, Fort Smith, Ark., for appellant.

G. Alan Wooten, Fort Smith, Ark., for appellee.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

PER CURIAM.

Richard S. Brown, M.D. appeals from an order of the district court[1] granting a motion for a directed verdict in favor of the Cooper Clinic, P.A. on his claim against the clinic for accounts receivable. For reversal, Dr. Brown argues that the district court erred in finding that he was an employee of the clinic, that when he terminated his employment he was no longer entitled to compensation, and in failing to consider his unjust enrichment claim. We affirm.

By letter dated July 12, 1979, the clinic offered Dr. Brown a position on its surgery staff. The letter stated that Dr. Brown would be given a guaranteed annual income of $42,000 and that for any month the "Cooper Clinic income distribution plan" produced more than the guaranteed monthly income, Dr. Brown would receive the larger amount. In addition, the clinic of-

1. The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas.

fered Dr. Brown benefits, such as health, life, disability, and malpractice insurance, a leased automobile and its expenses and a two-week paid vacation. At the beginning of his third year, Dr. Brown would be compensated as a stockholder of the clinic.

Dr. Brown signed the letter on September 11, 1979, and began work at the clinic in November 1979. On September 1, 1981, Dr. Brown informed the clinic administrator that he intended to terminate his employment with the clinic effective January 1, 1982. Dr. Brown asked the administrator how he would receive his portion of the clinic's accounts receivable after he left the clinic. The administrator told Dr. Brown he would not be entitled to any portion of the accounts receivable. The clinic's executive board affirmed the administrator's decision. Instead of leaving the clinic on January 1, 1982, Dr. Brown left in October 1981.

On January 1, 1982, Dr. Brown filed suit against the clinic, alleging that "[u]nder the terms of the agreement," the clinic owed him $41,548.46, which represented Dr. Brown's portion of the "total accounts receivable" computed pursuant to the clinic's income distribution plan. Appellant's First Amended Complaint, ¶ 6.

The "Cooper Clinic income distribution plan" was a formula whereby monies collected monthly for billed clinic services would be allocated for various clinic expenses. Forty-five percent of the monthly collections were distributed to the surgery department. According to agreements with other members of the surgery department, Dr. Brown would receive forty percent of the collections as his monthly salary under the plan. "Collections" were monies received monthly on payments of accounts. "Accounts receivable" were amounts billed but not yet collected for services rendered. There was approximately a one to three-month delay in the collection of the accounts receivable.

It is undisputed that the letter agreement of July 12, 1979, is silent concerning Dr. Brown's entitlement to accounts receivable in the event of termination. Dr. Brown testified that when he left the clinic he expected to be paid a portion of the fees billed but not yet collected for surgical procedures that he had performed at the clinic. Dr. Brown admitted, however, that prior to his discussion with the clinic administrator, he had never discussed this issue with any member of the clinic. The clinic's unwritten policy was that physicians were not entitled to any portion of the clinic's accounts receivable on departure.

At the close of Dr. Brown's evidence, the clinic moved for a directed verdict. The clinic argued that Dr. Brown had alleged in his complaint that he was entitled to a portion of the clinic's accounts receivable pursuant to the clinic's income distribution plan and that Dr. Brown's evidence was that the income distribution plan was based on collections, not on accounts receivable. The clinic also argued there was no evidence of any other agreement that would entitle Dr. Brown to a portion of the amounts receivable. In response, Dr. Brown's counsel contended that he was not requesting "accounts receivable per se" but only a portion of the fees attributable to services Dr. Brown performed prior to his departure. Counsel explained that his theory of recovery was not based on an agreement but was more in the nature of an implied contract, with the measure of damages to be computed according to the agreement. Over the clinic's objection, Dr. Brown's counsel moved to amend his pleadings to conform to the evidence.

The district court granted the clinic's motion for a directed verdict. The district court found that Dr. Brown was an employee of the clinic and further observed that the clinic's income distribution plan was based on collections and that the agreement was silent on compensation in the event of termination. It concluded that there was a total failure of proof that Dr. Brown was entitled to any portion of the accounts receivable, and that "when the doctor ceased to be an employee of the clinic ... his monthly salary terminated" and "all right to any further compensation ceased."

After the court made its oral rulings, Dr. Brown's counsel in effect moved to renew his motion to amend his pleadings to allege an unjust enrichment claim. Counsel conceded that the "facts were not that [Dr. Brown] was entitled to the clinic's accounts receivable as accounts receivable." The district court rejected his argument, stating that the complaint had not pleaded quantum meruit and that the case had been tried on the written agreement.

■■■ On appeal Dr. Brown argues that the district court erred in failing to consider his unjust enrichment claim. Fed.R. Civ.P. 15(b) provides "(w)hen issues not raised by the pleadings are tried by the express or implied consent of the parties," a party may move to amend his pleadings to conform to the evidence. The purpose of the rule "is to bring the pleadings in line with the actual issues upon which the case was tried[.]" *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1218 (8th Cir.), (*quoting Gallon v. Lloyd-Thomas, Co.*, 264 F.2d 821, 825 n. 3 (8th Cir.1959)), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). However, "an amendment after judgment is not permissible which ... changes the theory on which the case was actually tried, even though there is some evidence in the record introduced as relevant to some other issue which would support the amendment." *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d at 1218 (emphasis deleted). Further, "in determining whether to permit an amendment under Fed.R.Civ.P. 15(b), the district court has broad discretion and will not be reversed except upon a showing of abuse." *Nielson v. Armstrong Rubber Co.*, 570 F.2d 272, 276 (8th Cir.1978). The district court denied Dr. Brown's motion because the court found that the case had not been tried on an unjust enrichment theory. We

find no abuse of discretion. *Compare Howard v. Green*, 555 F.2d 178, 183 (8th Cir.1977) (unjust enrichment claim tried with implied consent of the parties).

■ Brown also argues that the district court erred in failing to submit to the jury whether Brown was an employee of the clinic or an independent contractor. Brown does not demonstrate why it was necessary that this issue be submitted for a jury determination. We view the district court's finding that Dr. Brown was an employee [2] simply as a foundation for its further conclusion that he had no ownership interest in any assets of the clinic, including accounts receivable, as these were the property of the corporation as a separate entity, and, accordingly, had "failed to prove by a preponderance of the evidence that he is entitled to any amount in this case" (Tr. at 186). In its written order the district court amended its ruling to state that Brown "has failed to adduce any substantial evidence from which reasonable jurors could determine that a contract existed between the parties entitling him to the relief requested." Submission for jury determination of the issue of whether Dr. Brown was an employee or an independent contractor would not establish Dr. Brown's right to recover. While the court reasoned that as an employee he had no rights in the assets of the corporation, it does not follow that if he was an independent contractor with the corporation he would have had rights in its assets. The fundamental issue underlying Dr. Brown's right to recover was whether he had proved some right arising from his relationship with the corporation to justify recovery. A finding that he was an independent contractor would not necessarily have established any right to recover in view of the court's determination that there

**2.** We need not determine whether the district court properly determined that Dr. Brown was an employee. However, careful analysis of *Carter v. Ward Works, Inc.*, 246 Ark. 515, 439 S.W.2d 286, 287 (1969) (citation omitted), *Cody v. Ribicoff*, 289 F.2d 394, 398 (8th Cir.1961), and *Azad v. United States*, 388 F.2d 74, 77 (8th Cir. 1968), applied to the facts in this case, where the

clinic furnished the necessary facilities and equipment, collected the fees, provided insurance coverage, paid federal taxes and social security, provided other fringe benefits, including an automobile and its expenses, and regarded him as an employee, would support this conclusion.

was no evidence establishing such a contractual right.

 Brown also argues that his right to the additional compensation in the form of the accounts receivable should have been submitted to the jury. The district court, however, ruled that Brown had not produced evidence to demonstrate that he had any rights to the accounts receivable. We conclude that the district court did not err in directing a verdict for defendant. We have observed in *Dulin v. Circle F Industries, Inc.*, 558 F.2d 456 (8th Cir.1977), and *Marshall v. Humble Oil & Refining Co.*, 459 F.2d 355, 358–59 (8th Cir.1972), that because the Arkansas and federal standards are substantially the same, in determining questions of sufficiency of the evidence to take an issue to the jury, it makes no difference whether the federal law or the law of Arkansas is applied. We have recently commented on the standards to be applied in directing a verdict. *Dace v. ACF Industries, Inc.*, 722 F.2d 374, 375 (8th Cir.1983); *Crues v. K.F.C. Corp.*, 729 F.2d 1145 (8th Cir.1984). We are satisfied that the district court, in directing the verdict, considered the evidence in the light most favorable to Brown, gave it the benefit of all legitimate inferences, and determined that reasonable minds could not differ.

 Dr. Brown argues that the district court improperly made findings of fact in a jury case and that this may well be reversible error. *Moore's Federal Practice* 50.-03(1). We have carefully analyzed the ruling of the district court, and while it clearly articulated a number of findings of fact, we do not read the ruling as findings based upon disputed factual issues, but, rather as simply a recitation of the evidence that it analyzed in reaching its conclusion that Dr. Brown had established no right to recover. Insofar as the recitation was designated as findings of fact, we are convinced that the comments were mere surplusage. The court clearly ruled that Dr. Brown had failed to prove a right to recover and its later written order amending its ruling clarified that he had not established a contract entitling him to relief.

Dr. Brown argues that the district court erred in failing to sustain his motion for new trial. We have determined that the district court properly directed a verdict because Dr. Brown had not established his right to recover as a matter of law. Under these circumstances, granting a motion for new trial would be inappropriate.

We have considered Dr. Brown's other claims and find them to be without merit. His argument that he was wrongfully caused to leave the clinic on October 1, 1981 instead of January 2, 1982 is answered by his testimony that he left because of the disagreement on the accounts receivable (Tr. 75–76).

We affirm the judgment of the district court.