CARTER *v.* VICTOR CHEMICAL WORKS.

(*Nashville,* December Term, 1936.)

Opinion filed February 13, 1937.

HOWARD B. SHOFNER, of Shelbyville, for plaintiff in error.

TRABUE, HUME & ARMISTEAD, of Nashville, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Petitioner in this compensation case is the widow of George L. Carter, who accidentally received fatal injuries while in the course of his employment by defendant. She is entitled to 30 per cent. of the deceased's average weekly wages. The sole question presented is the amount of this average weekly wage. The deceased had been regularly employed by defendant for all of the year before his death, "and for several years prior thereto." The trial judge arrived at this weekly wage by dividing the total earnings of the deceased for the year preceding his death by 52. This total is agreed to be $1,716.86, and 1/52 of this sum is $33.01. Petitioner was awarded 30 per cent. thereof for the period provided by the act.

Petitioner says that while the deceased was regularly and exclusively employed by this defendant the entire year, and worked some part of each of the 52 weeks, he did not work every day of every week, nor the same number of hours in all the days, and that, therefore, his

average weekly wages should be arrived at by taking the total number of days he actually worked, and breaking this number of days down into weeks, and dividing the total sum of wages for the year by this number of weeks. So doing, it appears that he worked 37 weeks, which divided into $1,716.86 yields $46.40 as the average weekly wage.

A tabulated record is filed from which it appears that the deceased worked days in each of the 52 weeks, in some weeks seven days, others six days, others five days, others four days, in two of the weeks three days and, in one week only, two days. His highest weekly earning was $56.19, and his lowest $13.78. The only explanation appearing for the variation from week to week is in this sentence from the stipulation of facts: "Some weeks there was more work for him to do than others." The method adopted by the trial court was correct.

The applicable rule laid down by our statute, subsection (c) of Code, sec. 6852, is thus restated in *White* v. *Pinkerton Co.*, 155 Tenn., 229, 291 S. W., 448, 449, in three subdivisions, the first two, as follows:

"(1) Where the employee has been working for the employer for as much as a year, prior to the injury, divide the total wages received by 52.

"(2) Where the employment, prior to the injury, was less than 52 weeks, divide the total wages received by number of weeks employed; 'provided, results just and fair to both parties will thereby be obtained.'"

The third subdivision, inapplicable here, relates to employment of short duration, when the weekly earnings of others "in the same grade" will be looked to. The employment here was for more than a year, and

there is no proof of the weekly earnings of others in the same grade.

The facts here bring the case within the terms of the first subdivision above stated. The second subdivision is invoked, but "the employment" was not for less than 52 weeks. The workman was employed each of every week, for more or less days one week than another, earning varying weekly wages, accordingly. It is not a case where, although the employment was continuous, the employee lost time therefrom by reason of sickness, or other fortuitous circumstances, such as was true in the case of *Wilmoth* v. *Phoenix Utility Co.*, 168 Tenn., 95, 75 S. W. (2d), 48, relied on for petitioner.

The distinction, given determinative recognition in the Wilmoth Case, was that between loss of time occasioned by chance or accident, such as temporary disability of the employee; and, for example, a temporary breakdown in machinery, or temporary and occasional interruptions or suspensions of operations because of bad weather, inadequate shipping facilities, or limitations on demand for the products. Workers regularly employed in manufacturing, mining, or outdoor construction habitually lose time occasionally in the due course of their employment because of such incidental happenings as suggested. These are conditions of such employment, to be expected to arise, and the average earnings of the worker are commonly and naturally affected thereby. His average earnings are necessarily subject thereto. For example, a stonemason or bricklayer employed regularly by a building contractor, paid by the hour or day, cannot work in rain or snow. It is a matter of common knowledge that provision for such to be expected sus-

pensions of working time is made in an increase of the hourly or daily wage rate paid such workers.

In the instant case, the employee, as above shown, worked some weeks seven days, others, six, five or four, as the demand or opportunity arose from week to week, some weeks short time, others overtime. This he did through the years. How can his average weekly earnings be better, or more fairly arrived at, than by the method applied by the trial court? The compensation to the widow is thus determined by the compensation which the deceased earned over a long period for the support of his dependents and himself while living.

This is the generally accepted view. In *Sugars* v. *Ohio Match Co. et al.,* 53 Idaho, 408, 23 P. (2d), 743, 744, construing a statute of similar import, the employing company was able to carry on its logging operations for an average of only six months in the year. The employee had been regularly and exclusively employed by this employer for six years prior to the accident. It was held that his average weekly earnings must be arrived at by dividing the total wages received in the year by 52. The opinion thus quotes from *Littler* v. *George A. Fuller Co.,* 223 N. Y., 369, 119 N. E., 554, 555: "If the nature of the employment does not permit steady work during substantially the whole of the year the annual earning capacity of the injured employee in the employment is the proper basis of compensation."

Said the court: "The true test has been announced as follows: What were the average weekly earnings, regard being had to the known and recognized incidents of the employment, including the element of discontinuousness. *Anslow* v. *Cannock Chase Colliery Co., Ltd.,* 1

K. B. [1909], 352; *Little* v. *George A. Fuller Co., supra.*"

Among other authorities cited in 71 C. J., p. 798, for the rule that, "Where there has been a continuous employment for the preceding year, the average weekly earnings are to be arrived at by a simple division of the annual earnings," is *Braggs Quarry* v. *Smith,* 161 Tenn., 682, 33 S. W. (2d), 87, 34 S. W. (2d), 714, 715.

While the principle we apply in the instant case is that applied in the Smith Case the facts are not identical, nor is the specific rule therein employed given application here. In that case, while Smith's working time was subject in part to outdoor weather conditions, it appeared that he worked only "when it suited him," and the court adopted as a basis the average weekly wages he in fact received, according to the best evidence. It was found impracticable to use the first rule announced in *White* v. *Pinkerton Co., supra.* The court said: "It is only when the employment has been regular and continuous for a year or longer that the first rule, referred to above, is to be applied. That is not this case."

In the instant case the employment had been regular and continuous for several years, although the weekly earnings varied in amount. In this situation to arrive at his average weekly earnings, division of the annual total by 52 was demanded. The weekly variableness in earnings was not due to sickness or other disability, or other fortuitous, that is, chance happenings and uncontemplated circumstances, but was a normal and recognized incident of his regular employment. This is the distinctive principle adopted by the English court in the leading case of *White* v. *Wiseman,* 3 K. B., 352, Ann. Cas. 1913D, p. 1021. Says Farwell, L. J., "The de-

cision of the House of Lords, in which the Lord Chancellor quotes Cozens-Hardy M. R., with approval, covers this case completely. 'In my opinion,' says the Master of the Rolls, 'the true test is this: What were his earnings in a normal week, regard being had to the known and recognized incidents of the employment? If work is discontinuous, that is an element which cannot be overlooked.' [1909] 1 K. B., 355. That is an element which has been completely overlooked by the learned county court judge in this case." The holding of the county court judge was reversed.

The judgment is affirmed.