**Della Louise RUSSELL,
Plaintiff-Appellee,**

v.

**GENESCO, INCORPORATED,
Defendant-Appellant.**

Supreme Court of Tennessee.

May 9, 1983.

R.E. Bonner, Jr., McMinnville, for defendant-appellant.

Michael D. Galligan, McMinnville, for plaintiff-appellee.

## OPINION

DROWOTA, Justice.

The Defendant, Genesco, Inc., appeals this workers' compensation action, asking us to review the awards granted the Plaintiff. The Defendant concedes the Plaintiff sustained an injury compensable under the workers' compensation laws on September 4, 1980. The Defendant argues that the Chancellor's computations under T.C.A. § 50–902(c) and under an independent workers' contract are flawed. In addition, the Defendant challenges the Chancellor's ruling that it is liable for certain medical expenses, in the absence of evidence that the expenses were necessary and reasonable.

The testimony of the witnesses establishes that the Plaintiff worked for the Defendant six years prior to the time she brought this suit. During that six-year period, the Plaintiff performed outstanding work for the Defendant and had worked herself up to an average hourly wage of three dollars and seventy cents ($3.70). In late October of 1979, the Plaintiff suffered a wrist injury, and she was paid temporary total disability for six weeks. She was also paid an additional weekly compensation wage in accordance with the terms of an independent contract between the Defendant and its employees. The personnel manager for the Defendant, Austin Golden, testified that the Plaintiff's disability payments for her 1979 injury were calculated on a 40-hour work week. The Plaintiff returned to work in January of 1980, but found, after several attempts to work, her wrist injury prevented her from performing her required tasks. She left work during the latter part of January and returned around mid-June of 1980. It appears she worked for a week and then left again to have gallbladder surgery. She returned to work on September 4, 1980, the day on which she suffered the injury to her back.

The Defendant introduced into evidence its payroll records which show the Plaintiff's earnings during the 52-week period immediately preceding her September, 1980, injury to be as follows:

| | |
|---|---|
| 9/12/79 | $ 83.68 |
| 9/19/79 | 148.56 |
| 9/26/79 | 88.30 |
| 10/03/79 | 111.04 |
| 10/10/79 | 142.98 |
| 10/17/79 | 86.34 |
| 1/09/80 | 26.59 |
| 1/16/80 | 156.51 |
| 1/23/80 | 26.85 |
| 6/18/80 | 49.60 |
| TOTAL: | $920.45 |

Those records also show that the Plaintiff did not receive a paycheck in January or February of 1979, that she received wages for only one week in March and only a week in May. She testified that her irregular

work attendance was due to a "lot of sickness and things." We note the Plaintiff received the same wages for none of the weeks between January 3, 1979, and September 12, 1979.

The Chancellor computed the Plaintiff's average weekly wages on the basis of the testimony that she earned $3.70 per hour and that her disability payments for her 1979 injury were computed on a 40-hour work week. He concluded that the Plaintiff's average weekly wages were $148, and he found her compensation rate to be $98.66. The Chancellor did not consider the Plaintiff's actual earnings because he opined that actual earnings were only relevant in computing the average weekly wages of a part-time employee. He implicitly found the Plaintiff was not a part-time employee. The Defendant argues that since the Plaintiff's gross wages for the 52-week period immediately preceding the date of the Plaintiff's injury were $920.45, paid in ten separate weekly pay periods, the Plaintiff's average weekly wages as defined by T.C.A. § 50–902(c) should be $92.04 (the earnings for the past 52 weeks divided by the number of weeks in which the Plaintiff received wages).

Section 50–902(c) provides, in relevant part, as follows:

> Average weekly wages shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two (52) weeks immediately preceding the date of the injury divided by fifty-two (52); but if the injured employee lost more than seven (7) days during such period when he did not work, although not in the same week, then the earnings for the remainder of such fifty-two (52) weeks shall be divided by the number of weeks remaining after the time so lost has been deducted.[1]

The method of calculating the average weekly wages for employees under this section has been the subject of some uncertainty. For, while the statute clearly addresses the instance of a regular worker of a forty-hour week, it offers little guidance in computing the average weekly wages for part-time employees and irregular or intermittent employees. Nor does it address the case of the regular employee, whose weekly wages vary because of the nature of the employment. This Court, therefore, has had the duty of carving out the methods of computing average wages as to these special cases. The court has done so, guided by the broad equitable intent of the legislature to compensate, adequately, injured employees and by the judiciary's duty to reach results which are fair to both the employer and the employee.

As regards part-time employees, we have said that average weekly wages should be determined by dividing the total actual wages of the 52-week period by the number of weeks in which the employee received wages. *E.g., McKinney v. Feldspar Corp.,* 612 S.W.2d 157 (Tenn.1981); *Gaw v. Raymer,* 553 S.W.2d 576 (Tenn.1977). This Court has also addressed the question of how the average weekly wages should be computed for one employed intermittently or irregularly. In *Toler v. Nashville, C. & St. L. Ry.,* 173 Tenn. 378, 117 S.W.2d 751 (1938), the employee worked for the employer for more than ten years, but was only assigned work as it became available. During the year prior to his injury, he worked fourteen weeks. The Court determined that the proper method of computation was to divide the total wages received during the year by the number of weeks in which the employee received wages. This method is the same as that for computing the average weekly wages of a part-time employee.

Since the Chancellor found the Plaintiff was a regular employee of the Defendant, and since there is evidence to support that finding, we turn to cases in which this Court has addressed the method of computation for regular employees. In *Carter v. Victor Chemical Works,* 171 Tenn. 141, 101 S.W.2d 462 (1937), the claimant's deceased

---

1. The latter part of the section concerns instances in which the employee had been employed for less than 52 weeks before his accident. That is not the case here.

had been regularly employed by the defendant for all the year before his death and several years prior thereto. The trial judge arrived at the deceased's average weekly wages by dividing the total earnings for the year preceding his death by 52. On appeal, the claimant argued that while the deceased was regularly and exclusively employed by the defendant the entire year, and worked some part of each of the 52 weeks, he did not work every day of every week, nor the same number of hours in all the days, and that, therefore, his average weekly wages should be arrived at by taking the total number of days he actually worked, and breaking this number of days down into weeks, and dividing the total sum of wages for the year by this number of weeks.

The record in *Carter* showed that the deceased worked days in each of the 52 weeks. In some weeks he worked seven days, in others, six days, and so forth. The only explanation appearing for the variation from week to week was the stipulated fact that in some weeks there was more work to do than in others. In affirming the trial court, this Court held (1) that the proper method of computing the average wages of a regular employee was to total his earnings and divide by 52, and (2) that in deciding which "lost" days could be deducted from the 52 weeks, only sickness, other disabilities and fortuitous events could be considered. The Court noted, in *Carter,* that the weekly variableness in earnings was not due to sickness or fortuitous events, but was a normal and recognized incident of the deceased's regular employment.

■ The claimant in the case of *Braggs Quarry v. Smith,* 161 Tenn. 682, 33 S.W.2d 87 (1930) (Petition to rehear, 161 Tenn. 687, 34 S.W.2d 714 (1931)), was regularly employed in loading rock at so much per car. And, while his working time was subject in part to the weather conditions, it appeared that he worked only "when it suited him." In the year preceding the accident, the claimant worked on an average of less than 3 days per week, and his average wages during the period were $12.50 per week.

There were only 4 weeks during the year that the claimant worked the full 6 days. His average earnings for the 4 weeks were $22.50. It was insisted that the average wages received for the weeks in which the claimant put in full time were the basis of computation. This Court disagreed, stating:

> This provision [T.C.A. § 50–902(c)] clearly contemplates one regularly employed for a normal week as distinguished from "periodical employment." Where one regularly employed earns a given sum for a normal week it would be inequitable, in computing his compensation in case of accident, to include those weeks when, on account of illness or because the plant was shut down for repairs, his earnings were reduced. Likewise, it would be unjust to the employer to require him to pay one who only works three days a week the wages received by one who works six days a week engaged in similar work.

161 Tenn. at 686, 33 S.W.2d 87. From *McKinney, Toler, Carter,* and *Braggs,* it is evident that the Court has attempted to arrive at a fair average for both the employer and the employee. And in each instance, actual earnings were considered. It seems to us that, except in those cases where the claimant "earns a given sum for a normal week," actual wages should be used in computing the claimant's average weekly wages. The Chancellor in the present case, in failing to consider the Plaintiff's actual earnings, erred.

■ Although in this case the Chancellor's method resulted in a healthy award for the Plaintiff, we can conceive of cases in which the claimant might be short-changed by the method. For example, had the Plaintiff worked substantial overtime, she would have been denied the benefit of the Chancellor's considering the extra earnings. And it would not do for the Chancellor to alter his method of computation depending on which gives the Plaintiff the greater award. We also point out that the Chancellor's method works somewhat of an injustice to the Defendant. Austin Golden testi-

fied the workers of Genesco are paid by piece, that is, according to the number of shoes completed. This testimony is not contradicted. He also testified the amount of work for employees varies during the year, and that the employees are aware of this when they accept the jobs. This testimony is not contradicted. Further, the payroll records show that during the entire period extending from January 3, 1979, to September of 1980 (almost two years) the Plaintiff earned $148 or more in only three pay periods. The highest gross of those pay periods is $156.51.

The Chancellor's findings of the Plaintiff's average weekly wages and compensation rate are reversed. We remand for an accurate determination of the Plaintiff's statutory benefits. The Chancellor shall compute the Plaintiff's average weekly wages by totaling her actual wages for the relevant 52-week period and dividing by 52. Lost days shall be deducted from the 52-week period to the extent sickness, disability, or some other fortuitous circumstance caused the loss. There shall be no deductions for lost days caused by circumstances incident to her employment.

■ We agree with the Defendant that the Chancellor incorrectly computed the Plaintiff's entitlement under the independent workers' contract. The contract's terms provide the Defendant "will pay make-up in an amount which, when added to the worker's compensation, will equal the employee's average weekly wage for the last six weeks worked (exclusive of overtime), less statutory deductions." The sum of the Plaintiff's gross wages during the last six weeks she worked is $488.87. The record shows that withholding taxes and FICA were deducted from Plaintiff's wages. The total of these deductions for the six weeks is $68.97. This leaves a net income of $419.90 for the last six weeks the Plaintiff worked. The average weekly wage is, therefore, $69.98. The Plaintiff is entitled to additional compensation under the contract to the extent it is necessary to bring the compensation received under the laws up to this average weekly wage. On

remand the Court will determine the exact amount to which the Plaintiff is entitled. The Chancellor found the Plaintiff was entitled to this additional compensation for the period of her temporary total disability, that is, September 4, 1980, through September 15, 1981. We do not alter this finding.

■ As its third assignment of error the Defendant challenges its liability for the medical bills introduced at trial. The Defendant avers that the Chancellor erred in admitting and considering the accuracy and reasonableness of the medical expenses through the testimony of the Plaintiff. In *Phillips v. Fleetguard Div. of Cummins Eng. Co.*, 480 S.W.2d 528 (Tenn.1972), this Court held that the chancellor erred in admitting and considering the accuracy and reasonableness of medical expenses through the testimony of the plaintiff, where competent evidence was available. In so holding, the Court placed the burden upon the claimant to establish the necessity and reasonableness of medical charges before recovery of the charges, under the workers' compensation laws, could be granted. That case requires such proof regardless of whether the treating physicians were designated by the employer, as allowed by statute, or whether the physicians were selected by the Plaintiff.

In *New Jersey Zinc Co. v. Cole*, 532 S.W.2d 246, 251 (Tenn.1975), Chief Justice Fones pointed out that,

> [u]nlike negligence cases, liability for medical expenses in a workmen's compensation case are governed by the statute. T.C.A. § 50–1004 [now § 50–6–204] provides, inter alia, that the employer shall furnish to the employee such medical and surgical treatment, etc., ". . . as ordered by the attending physician . . . as may be reasonably required . . ."

T.C.A. § 50–6–204(a)(1) grants an employer, upon request, the right to "a complete medical report as to the claimed injury, its effect upon the employee, the medical treatment prescribed, an estimate of the duration of required hospitalization, if any, and an itemized statement of charges for medical services . . ." The statute also pro-

vides that, if the employer supplies a group of physicians from which the employee may select a treating physician, absent exceptional circumstances, the employee must accept the proffered aid. Considering the employer's access to medical reports, hospital records and charges, and considering the claimant is bound to accept the medical attention provided by the employer, we think the employee should not bear the burden of establishing the necessity of medical treatment or the reasonableness of medical charges when the employer has designated the physician or the employer's designate refers the claimant to other specialists.

One of the reasons the legislature gives the employer the right to designate a group of physicians is to allow the employer to select "reputable physicians and surgeons." *See Greenlee v. Care Inn of Jefferson City,* 644 S.W.2d 679 (Tenn.1983). If they are reputable, medical assistance supplied to the claimant should be necessary and fees be "such charges as prevail for similar treatment in the community where the injured employee resides." § 50–6–204(a)(4). And if those charges are not reasonable, the employee is hardly the party which should be saddled with the burden of persuasion: the employer has more knowledge of these matters. We are of the opinion there should be a presumption that treatment furnished by physicians designated by the employer is necessary and the charges reasonable. The employer has the burden of persuading the court to the contrary.

Since this is the better result, considering the nature of the worker's compensation laws and the liberal constructions which we are bound to give those laws, we overrule *Phillips* in this respect, and any other cases inconsistent with this opinion. The Plaintiff still has the burden of establishing the necessity and reasonableness of charges incurred under physicians not designated or otherwise approved by the employer.

In the present case, the record is unclear whether the treating physicians were designated by the Defendant. Therefore, on remand, proof shall be taken on this issue pursuant to T.C.A. § 27–3–128. If the Chancellor finds that the Plaintiff was treated by physicians designated by the Defendant, then any treatment "as ordered by the attending physician[s]" is presumed to be necessary and "reasonably required."

The Chancellor's findings of the Plaintiff's awards under the workers' compensation laws and under the independent contract are reversed. The case is remanded for computation of Plaintiff's entitlements using the methods set out in this opinion and for additional proof as provided above. The costs of this appeal are taxed to the Plaintiff and Defendant equally.

FONES, C.J., COOPER and HARBISON, JJ., and LEWIS, Special Justice.