

FILED
Jan 15, 2020
11:12 AM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT NASHVILLE

| | | |
|---|---|---|
| **DENNY WOODARD,** | ) | **Docket No. 2018-06-2162** |
| **Employee,** | ) | |
| | ) | |
| **v.** | ) | **State File No. 69647-2018** |
| | ) | |
| **FREEMAN EXPOSITIONS, LLC,** | ) | |
| **Employer.** | ) | **Judge Joshua D. Baker** |

---

## EXPEDITED HEARING ORDER

---

The Court held an expedited hearing on December 19, 2019, to consider whether Mr. Woodard would likely prevail at a final hearing against Freeman Expositions's affirmative defenses of willful misconduct and illegal drug use. For the reasons below, the Court finds Mr. Woodard is likely to prevail and grants him medical and temporary disability benefits. The Court reserves the request for an attorney's fee.

### Claim History

Mr. Woodard worked intermittently as a stagehand for Freeman through his union, the International Alliance of Theatrical Stage Employees (the Union). At center stage in this dispute is a top-heavy cart loaded with four-by-eight sheets of Masonite, Freeman's admonition to "push, don't pull" the cart, and a failed drug test.

On September 11, 2018, Mr. Woodard's lead, Josh Tafoya, asked him to wheel a cart loaded with roughly fifteen sheets of Masonite, which is a material used by stage hands to protect flooring during set-up and dismantling. The cart had a rectangular bottom, four wheels, and a rail on its right side. Masonite sheets dwarfed the cart in both height and width, making the cart unstable.

Video of the accident showed Mr. Tafoya following closely behind Mr. Woodard as he pushed the cart. In the video, Mr. Woodard struggled against the cart's leftward trajectory while Mr. Tafoya walked away to take a phone call. While attempting to avoid

obstacles by steering the cart to the right, the Masonite fell over on his left ankle and right arm.

Mr. Woodard received some authorized treatment from Dr. Samuel Crosby, including surgery. Dr. Crosby diagnosed and treated arm and leg fractures, taking Mr. Woodard off work until October 23, 2018. At a follow-up visit on that date, Dr. Crosby felt that Mr. Woodard was doing well and transferred him to a short cast. He recommended follow-up in four weeks for likely transfer into a walking boot. However, Mr. Woodard received no further care.

Freeman denied Mr. Woodard's claim in mid-October after a drug test taken at the hospital the day of the accident was positive for oxycodone and marijuana. Mr. Woodard denied smoking marijuana on the day of the accident but admitted he smoked it at a Union picnic days before the test. Concerning oxycodone, Mr. Woodard said he received Percocet at the hospital to treat his pain, resulting in the positive test result. He acknowledged a history using pain pills for a prior work injury but stated that in recent years, due to fears of addiction, he had moved instead to CBD oil for pain treatment. Mr. Woodard denied being intoxicated on the date of the accident, and three witnesses, including Mr. Tafoya, testified in depositions that Mr. Woodard did not seem to be under the influence of drugs that day.

The same witnesses also testified about the cart and about Freeman's "push, don't pull" rule. Timothy Harris, shop steward for the Union, testified frankly after viewing the video, "It was the wrong material on the wrong cart." When asked if he would agree that Mr. Woodard would not have been injured if he had followed the rule, he responded, "No, I don't think that made a difference. The cart was dangerous. It would have turned over no matter what he did." He also expressed "wonder" that Mr. Woodard "got as far as he did with [the cart] before it turned over."

Although Mr. Tafoya thought the cart safe to use, he called it "squirrely" and said it can only safely be pushed, not pulled. Mike Clark, operations manager for Freeman, testified that Freeman's "push, don't pull" rule applies to "everything we have with wheels." However, he acknowledged the Masonite was larger than the cart so moving it required gripping the Masonite and not the cart or a cart handle. He also said he "normally" pushed carts of Masonite by himself.

Mr. Tafoya admitted taking a cell phone call just before Mr. Woodard's accident.[1] He said that when he took the call he "had to be close to that timeframe that I, you know, told him to push [the cart] up there for me." He also said that when he answered the call,

---

[1] Mr. Harris said that taking a cell phone call while working would violate the Union's "Local 46 Policy."

Mr. Woodard said "he got it" in reference to pushing the cart.[2]  Mr. Woodard denies this.

Concerning notice and enforcement of the rule, signs in the Freeman warehouse read, "SAFETY FIRST, PUSH don't pull hand trucks."  Mr. Tafoya testified he warned others to be careful with the cart that injured Mr. Woodard, instructing them to "push don't pull."  Further, Mr. Harris said he emphasized the rule in his speeches and corrected workers every time he saw them pulling rather than pushing a cart.  He also testified that two people should have been moving the cart that injured Mr. Woodard.  Mr. Woodard received no formal discipline for his alleged violation of the rule and testified he has still not been formally disciplined.

Regarding Mr. Woodard's earnings at Freeman, the parties filed a wage statement.  The statement showed that he earned $4,932.12 over the fifty-two weeks just before the accident.  In that time, Mr. Woodard received pay from Freeman during fifteen, nonconsecutive weeks.  In those weeks, his wages varied widely from a maximum of $656.00 per week to a minimum of $82.00.  The wage statement listed his average weekly wage as $94.85 per week.

When asked about the sporadic nature of his work schedule and pay, Mr. Woodard said he worked "every time [the Union] called me," but he was not called to work every week.  On this issue, Mr. Harris characterized Union work as part-time employment.  Mr. Tafoya agreed that Union workers have no control over how often they can work for Freeman.

## Findings of Fact and Conclusions of Law

To prevail at an expedited hearing, Mr. Woodard must provide sufficient evidence to show that he is likely to prevail at a hearing on the merits.  *See* Tenn. Code Ann. § 50-6-239(d)(1) (2019).  The Court finds he carried that burden.

Mr. Woodard got hurt when a cart carrying Masonite fell over on his left ankle and right arm while working for Freeman.  He broke his ankle in the fall.  The Court holds his injury arose primarily out of and in the course and scope of employment.

Freeman, however, contended Mr. Woodard's injury was not compensable because it resulted from illegal drug use and willful misconduct, specifically violation of a safety rule.  Workers' Compensation Law provides that "no compensation shall be allowed for an injury … due to [an] employee's willful misconduct [or] … illegal drug

---

[2] Freeman also had a safety rule requiring two people to work as a team when moving "heavy equipment."  The rule, however, did not define heavy equipment.

use." Tenn. Code Ann. § 50-6-110(a)(1) and (a)(3). As these are affirmative defenses, Freeman has the burden of proving its defenses.

To show Mr. Woodard engaged in willful misconduct by violating a safety rule, Freeman must prove: (1) that Mr. Woodard had actual, as opposed to constructive, notice of the rule; (2) that he understood the danger involved in violating the rule; (3) that Freeman practiced bona fide enforcement of the rule; and (4) that Mr. Woodard lacked a valid excuse for violating the rule. *Mitchell v. Fayetteville Pub. Utilities*, 368 S.W.3d 442, 452-53 (Tenn. 2012).

In the Court's view, Mr. Woodard did not violate the push, don't-pull rule. The video shows, and his testimony corroborated, that he pushed the Masonite forward and to the right using his hands. The video does not show him pulling on a handle or pulling the Masonite toward himself. The Court agrees with Mr. Harris's testimony that the accident happened because the wrong material was on the wrong cart not because of Mr. Woodard's actions.

Furthermore, evidence that Freeman enforced the push, don't-pull rule was scant. While Mr. Tafoya said he warned people to be careful with this cart and Mr. Harris said he emphasized the rule in his safety speeches and corrected violations whenever he saw them, there was no evidence that Freeman disciplined anyone for breaking the rule. This included Mr. Woodard. The Court concludes Freeman is not likely to prevail on establishing a willful misconduct defense.

Concerning Freeman's illegal drug-use defense, Freeman acknowledged it is not entitled to the presumption under Tenn. Code Ann. § 50-6-110(c) that the proximate cause of this injury was illegal drugs. Without that presumption, Freeman must prove Mr. Woodard's drug use was the proximate cause of his injury.

Without expert testimony interpreting and explaining Mr. Woodard's drug test results and how those drugs could have caused this accident, the Court accepts Mr. Woodard's testimony and the testimony of the three other witnesses that he was not impaired. Thus, the affirmative defense of intoxication fails. Because both defenses failed, the Court holds Mr. Woodard would likely succeed at a hearing on the merits in proving compensability of his injuries and orders Freeman to provide treatment with Dr. Crosby.

Mr. Woodard also seeks temporary total disability benefits from his injury date to October 23, 2018, a period of six weeks. To establish entitlement to temporary disability benefits, Mr. Woodard must show a compensable injury disabled him from working, a causal connection exists between his injury and inability to work, and the duration of his disability. *Jones v. Crencor*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). Mr. Woodard met this burden as he will likely prevail at a hearing on the merits,

4

and Dr. Crosby took him off work for six weeks because of the injury. The Court, therefore, holds Freeman must pay him temporary total disability benefits for six weeks.

Because temporary total disability benefits are owed, the Court must determine Mr. Woodard's compensation rate. Freeman argued that his recovery is limited to the minimum compensation rate as he earned an average wage of $94.85 per week over the fifty-two weeks before his injury. Mr. Woodard argued he should receive benefits at the rate of $219.21 per week as he worked for Freeman only fifteen weeks over those fifty-two weeks. The Court agrees with Mr. Woodard.

The wage statement showed that Mr. Woodard worked an irregular schedule for Freeman in the year before his accident. During that time, he worked only fifteen weeks earning a total of $4,932.12. He had no control over when Freeman offered him work and testified without contradiction that he worked whenever they called him. Based on his testimony and the wage statement, the Court finds Mr. Woodard worked as a part-time or intermittent employee for Freeman. The average weekly wage of a part-time employee "should be determined by dividing the total actual wages of the 52-week period by the number of weeks in which the employee received wages." *Russell v. Genesco*, 651 S.W.2d 206, 208 (Tenn. 1983) (citing *McKinney v. Feldspar Corp.*, 612 S.W.2d 157 (Tenn. 1981); *Gaw v. Raymer*, 553 S.W.2d 576 (Tenn. 1977)). This calculation results in an average weekly wage of $328.81 and a compensation rate of $219.21. At this rate for fifteen weeks, the Court holds Freeman must pay Mr. Woodard $3,288.15 in temporary total disability benefits.

*Attorney's Fees*

Mr. Woodard also requested attorney's fees. Attorneys' fees at an expedited hearing should only be awarded in "extremely limited circumstances." *Thompson v.Comcast Corporation* (2018 TN Wrk. Comp. App. Bd. LEXIS 1), at *27. The best practice is to award fees after litigation is concluded when the parties and the Court "no longer face uncertainties over future developments." *Id*. While Mr. Woodard is claiming a wrongful denial, the Court's view of whether that denial was wrongful could conceivably change if Freeman produced expert testimony concerning the proximate cause of this injury. The Court, therefore, reserves the request for an attorney's fees.

It is **ORDERED** as follows:

1. Freeman shall provide Mr. Woodard reasonable, necessary, and related medical treatment with Dr. Crosby.

2. Freeman shall pay Mr. Woodard $3,288.15 in temporary total disability benefits.

3. Mr. Woodard's request for attorney's fees is held in abeyance pending a Compensation Hearing.

4. Absent an appeal to the Appeal's Board, Freeman shall comply with this order within seven business days.

5. This matter is set for a status conference on **Monday, March 30, 2020, at 9:00 a.m. (CDT). You must call 615-741-2113 to participate in the Hearing. Failure to call may result in a determination of issues without your further participation**

**ENTERED JANUARY 15, 2020.**

_____

**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

6

APPENDIX

Exhibits:

1. Medical Records
2. Mr. Woodard's Affidavit
3. First Report of Injury
4. Wage Statement
5. Mr. Harris's Deposition Transcript
6. Mr. Tafoya's Deposition Transcript
7. Mr. Clark's Deposition Transcript
8. Video No. 1
9. Video No. 2
10. Defense Counsel Letter—October 10, 2018
11. Defense Counsel Letter—October 18, 2018
12. Settlement Agreement from 2008 Injury
13. Photographs
14. Union Labor Agreement
15. Mr. Woodard's Interrogatory Responses
16. Freeman's Interrogatory Responses
17. Drug Test Results
18. Excerpts from Mr. Woodard's Deposition

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Request for Admissions Responses

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on January 15, 2020.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Denty Cheatham, Employee's Attorney | X | | X | Cheatham, Palermo, & Garrett 43 Music Square West Nashville, TN 37203 dcheatham.cpg@gmail.com |
| Daniel Todd, Employer's Attorney | | | X | dan@dantoddlaw.com |

_____

**Penny Shrum, Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



<u>Expedited Hearing Order Right to Appeal:</u>

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# EXPEDITED HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

**Employee** _____

v.

**Employer** _____

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## Additional Information
**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

## List of Parties
**Appellant (Requesting Party):**_____At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____  SF#: _____  DOI: _____

## Appellee(s)

**Appellee (Opposing Party):**_____ At Hearing: ☐Employer ☐Employee


Appellee's Address: _____

Appellee's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellee \**


## CERTIFICATE OF SERVICE

I,_____, certify that I have forwarded a true and exact copy of this
Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties
and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules
of Board of Workers' Compensation Appeals on this the_____day of_____, 20 ___


[Signature of appellant or attorney for appellant]  _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

## AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

    _____ Relationship: _____

    _____ Relationship: _____

    _____ Relationship: _____

    _____ Relationship: _____

6. I am employed by: _____

    My employer's address is: _____

    My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental $ _____ per month

Groceries    $ _____ per month    Telephone    $ _____ per month

Electricity    $ _____ per month    School Supplies $ _____ per month

Water    $ _____ per month    Clothing    $ _____ per month

Gas    $ _____ per month    Child Care    $ _____ per month

Transportation $ _____ per month    Child Support $ _____ per month

Car    $ _____ per month

Other    $ _____ per month (describe: _____ )

10. Assets:

Automobile    $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House    $ _____    (FMV) _____

Other    $ _____    Describe: _____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires: _____

LB-1108 (REV 11/15)                          RDA 11082