**FILED**
**Dec 04, 2024**
**08:17 AM(CT)**
**TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **Kenny Mutters,** | ) | **Docket No. 2024-60-2307** |
| **Employee,** | ) | |
| **v.** | ) | |
| **Ricoh USA, Inc.,** | ) | **State File No. 29467-2023** |
| **Employer,** | ) | |
| **And** | ) | |
| **Safety National Casualty Corp.,** | ) | **Judge Kenneth M. Switzer** |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS

---

The Court held an expedited hearing on Kenny Mutters's request for additional temporary disability benefits and attorney's fees. The parties also disputed the correct compensation rate. For the reasons below, the Court awards temporary disability benefits from June 10 through September 9, 2024, but denies his request for attorney's fees at this time. In addition, Mr. Mutters is likely to prevail at trial in showing the correct weekly compensation rate is $588.97.[1]

## Claim History

On April 7, 2023, Mr. Mutters injured his left knee and right shoulder when he slipped and fell on cardboard while working for Ricoh USA. Ricoh accepted the claim.

Authorized physician Dr. Benjamin Debelak performed surgery on the knee and shoulder and either took Mr. Mutters completely off work or placed restrictions after each visit for the next several months. Dr. Debelak placed Mr. Mutters at maximum medical improvement on January 9, 2024. Mr. Mutters testified that the doctor placed no permanent

---

[1] Ricoh also sought a ruling on whether it is entitled to credit for an alleged overpayment of temporary disability benefits. The Court declines to decide that issue at the interlocutory stage because section 50-6-207(1)(E) allows for a credit for overpayment against *permanent partial disability benefits*. This issue is not ripe.

restrictions on that date, and the treatment notes and final medical report do not mention work restrictions.

Throughout his treatment, Ricoh paid temporary disability benefits. Mr. Mutters testified that while treating he asked his supervisor, Randy Henson, about returning to work with his restrictions but was told no work was available. Instead, Ricoh offered severance, which he accepted. He did not ask for the severance but explained that he took it because "the job was not there any longer." Mr. Mutters's temporary disability benefits ended on March 19, 2024, and he filed his petition for benefit determination in early April.

Later that month, Mr. Mutters received additional authorized treatment with Dr. Debelak. The doctor diagnosed disorder of the right rotator cuff, but the notes do not mention work restrictions. Mr. Mutters underwent a shoulder MRI in May, and at the next visit on June 10, Dr. Debelak wrote: "Patient is NOT at MMI as he has recurrent right shoulder rotator cuff tearing of the rotator cuff that was repaired following his work injury in April 2023." (Emphasis in original). He recommended surgery. According to Mr. Mutters, Dr. Debelak told him he should not use his right upper extremity at the June visit; however, that restriction is not recorded in the treatment notes.

Rather, the first written documentation of that restriction is a July 16 response to a letter from Mr. Mutters's attorney. The letter asked, "Please advise as of 6/10/2024, the work status/ restrictions for Mr. Mutters[.]" Dr. Debelak wrote: "Mr. Mutters is retired at this time. However if he [were] working the current restrictions would be no use of right upper extremity."

At some point after the June 10 surgery recommendation, Ricoh requested utilization review. Neither party offered documentation or other proof on the utilization review process.[2] On September 10, Mr. Mutters underwent the surgery. Ricoh initiated temporary disability benefits as of that date.

Mr. Mutters contended he is due benefits from June 10 to September 9. He testified that he asked again about returning to work after reaching maximum medical improvement in January 2024, and again Ricoh did not have a job for him. If they had offered him work, he would have taken it. Mr. Mutters, age 63 on the date of trial, said he is not retired now but began receiving Social Security benefits in June 2024. He explained, "I just [drew] my social security because at that point in time I had no job and no income."

---

[2] On November 22, Mr. Mutters's attorney filed an affidavit describing procedural events and discussions between counsel after filing the petition. Ricoh objected on several grounds, including that Mr. Mutters did not file the affidavit within the deadline in the order setting the hearing and Tennessee Compilation Rules and Regulations 0800-02-21-.15(1) (2023). The Court sustains the objection solely on that basis.

Mr. Mutters acknowledged that he did not contact Ricoh to ask about modified duty in June 2024. He has not worked since his injury, nor has he applied for any jobs. He does not believe he will be hired by any employer with his current work restrictions.

Ricoh countered that it was unaware of Mr. Mutters's work restrictions after January 10. It supported this with a declaration from the claims manager for the third-party administrator, Nicole Godfrey, who testified: "The Employee was not paid TTD prior to his surgery of 09/10/2024 because I received no communication from the treating physician, Benjamin Debelak, M.D., or his office, that the restrictions for Mr. Mutters had changed since he was last seen and released on 01/09/2024."

Ricoh further argued that the July 16 response from Dr. Debelak is not a "work excuse" because it is not a "form"—but even if it were, it did not have notice of the restriction until after July 16. Ricoh additionally contended that Mr. Mutters's retirement precluded his eligibility for temporary disability benefits, although it conceded that no single on-point case supports this position.

As for Mr. Mutters's compensation rate, the parties agreed that he was paid two rates during the pendency of this claim, and they offered a corrected wage statement to make their arguments. The statement lists gross wages from April 10, 2022, through March 31, 2023, which total $19,436.10. Mr. Mutters testified that he underwent rotator cuff repair on May 26, 2022, and later a replacement of his left shoulder. He did not work from the date of the first procedure until January 2, 2023.

The parties disputed the circumstances of two payments Mr. Mutters received while he was recuperating from his left-shoulder surgery, as shown on the corrected wage statement.

First, Mr. Mutters said that payment of $556.97 on June 19, 2022, was paid time off that he accrued before the left-shoulder surgery; it was not wages earned for working during that time. Second, Mr. Mutters said a payment of $357.72 on September 11, 2022, was a quarterly "bonus" that all on his team received and did not depend on whether he worked. He asserted he worked for 22 weeks in the year before the date of injury and that the weeks noting these two payments should not be counted as weeks worked in the compensation rate calculation. He agreed that the $556.97 paid time off and $357.72 bonus should be included in his total gross wages.

In contrast, Ricoh maintained that Mr. Mutters earned wages for 26 weeks in the year before the work injury. It contended that the "raw wage data" attached to Ms. Godfrey's declaration characterizes the payments of $556.97 and $357.22 as "regular pay." The document also states that the bonus paid to Mr. Mutters was in a different amount and paid at a different time.

**Findings of Fact and Conclusions of Law**

Mr. Mutters must show that he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2024); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

*Temporary Disability Benefits*

As an initial matter, the Court finds Mr. Mutters's testimony credible in all respects. He was calm, at-ease, self-assured, steady, confident, forthcoming, reasonable, and honest. *See Kelly v. Kelly,* 445 S.W.3d 685, 694-695 (Tenn. 2014) (listing characteristics of a credible witness).

Mr. Mutters testified without contradiction that Ricoh never offered him light-duty work and instead suggested severance. His decision to accept the severance, having no other option, was reasonable, as is his receipt of social security benefits since June due to a lack of income from work. The Court finds that he did not "retire" voluntarily and credits his testimony that he wishes to return to the workforce. Moreover, Ricoh's insistence that an employee's retirement precludes any eligibility for temporary benefits is misplaced. It cited no single on-point case, and the Court similarly found no authority for that proposition.

Ricoh's argument that it was unaware of Mr. Mutters's work restrictions after January 10 is also unpersuasive. Mr. Mutters testified that he told his supervisor after being placed at maximum medical improvement in January that he had no restrictions and asked about work but was refused. Ricoh offered no contrary proof.

Ricoh similarly offered no case law to support its contention that a signed letter from a doctor about work restrictions is somehow inadmissible or should be afforded no weight because it is not on a "form." In fact, the Appeals Board gave implicit approval to these types of letters or medical questionnaires at the expedited hearing stage in *McKim v. Stansell Electric,* 2023 TN Wrk. Comp. App. Bd. LEXIS 11, at *10 (Feb. 22, 2023), holding:

> [A]n employee's entitlement to temporary disability benefits is a legal conclusion that is determined by considering certain factors, including medical restrictions and causation. The court properly relied on the medical information in [the doctor's] responses to the questionnaire regarding the cause of Employee's disability in determining Employee was entitled to temporary disability benefits.

Ricoh also cited no case concluding that because an employer did not have "notice" of an employee's restrictions when they were placed, it need not pay temporary disability benefits now.

To receive temporary total disability benefits, an employee must prove: (1) total disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *Jones v. Crencor Leasing and Sales,* 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). Further, "[t]emporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Id.* Thus, in circumstances where the treating physician has released the injured worker to return to work with restrictions prior to maximum medical improvement, and the employer cannot return the employee to work within the restrictions, the injured worker may be eligible for temporary partial disability. *Id.* at *8.

Here, on June 10, Dr. Debelak gave the opinion that Mr. Mutters was not at maximum medical improvement and placed restrictions, which Ricoh did not accommodate. Ricoh accepted the claim and reinstated benefits on September 10. Therefore, Mr. Mutters has shown he is likely to prevail at a hearing on the merits that he is entitled to temporary disability benefits for 91 days from June 10 to September 9, 2024.

*Average Weekly Wage and Compensation Rate*

The next question is the amount of benefits Mr. Mutters is owed for that timeframe.

Section 50-6-102(3)(A) defines "average weekly wages" as the injured worker's earnings for the 52 weeks immediately before the date of injury divided by 52, but:

> [I]f the injured employee lost more than seven (7) days during the period when the injured employee did not work, . . . then the earnings for the remainder of the fifty-two (52) weeks shall be divided by the number of weeks remaining after the time so lost has been deducted.

In deciding which lost days should be deducted from the 52 weeks, "only sickness, other *disabilities* and fortuitous events can be considered." *Russell v. Genesco, Inc.,* 651 S.W.2d 206, 210 (Tenn. 1983) (Emphasis added). Further, "[t]he determination of whether a day an employee does not work should be deducted from the computation of the average weekly wage is dependent upon the facts and circumstances of each case." *Cantrell v. Carrier Corp.,* 193 S.W.3d 467, 472 (Tenn. 2006).

Applying these principles and considering the circumstances of this case, Mr. Mutters testified that he did not work or earn wages from May 26, 2022, through January 1, 2023. The Court accepts this testimony over Ms. Godfrey's declaration and attachments that characterize two payments during that timeframe as "regular pay." Her characterization is not binding on this Court, and she was unavailable for cross-examination at the hearing. The Court finds that Mr. Mutters did not work during that time due to surgery and recovery, which is "disability." Under *Russell,* four weeks should be

deducted from the 26 weeks on the wage statement and "raw wage data" that Ricoh offered. For these reasons, Mr. Mutters is likely to prevail in a hearing on the merits as to the calculation of his compensation rate.

The Court further finds that Mr. Mutters worked and earned wages for 22 weeks in the year before his injury, and his total gross earnings were $19,436.10. Dividing that amount by 22 weeks yields an average weekly wage of $883.46 and a compensation rate of $588.97. His daily rate is $84.14, multiplied by 91 days, totals $7,656.74. Mr. Mutters's attorney is entitled to fees of 20% from this award. Tenn. Code Ann. § 50-6-226(a).

*Fees*

As for the other attorney's fees Mr. Mutters seeks, these fall under section 50-6-226(d)(1)(B) for Ricoh's alleged failures to timely provide the recommended surgery and to pay temporary disability benefits.

The Appeals Board has held that "a decision to award attorneys' fees and expenses at an interlocutory stage of a case should be made only in *extremely limited circumstances*." *Travis v. Carter Express,* 2019 TN Wrk. Comp. App. Bd. LEXIS 25, at *10 (June 24, 2019) (Emphasis in original). Further, "although a finding of wrongfulness may ultimately support an award of reasonable attorney's fees and costs in accordance with section 50-6-226(d)(1)(B), it does not, standing alone, support an award of attorney's fees and costs *at an interlocutory stage of the case*." *Id.* at *13 (Emphasis in original).

Here, Mr. Mutters argued that the surgery was not sent to utilization review until much later after the surgery was recommended and past the deadline. But he offered no admissible proof on this timing. Ricoh had the right to request utilization review under section 50-6-124. Further, on this record, the delay in payment of temporary disability benefits was not unreasonable.

Therefore, the Court finds that this case presents no "extremely limited circumstances" favoring a fee award at the interlocutory stage. Mr. Mutters is not likely to prevail at a hearing on the merits at this time that he is entitled to fees. The Court likewise declines to refer the case to the Compliance Program for consideration of the imposition of penalties. Mr. Mutters may renew these requests at the compensation hearing.

IT IS ORDERED AS FOLLOWS:

1. Ricoh shall pay Mr. Mutters temporary disability benefits in a lump-sum of $7,656.74. Mr. Mutters's attorney is entitled to fees of 20% from this award.

2. Mr. Mutters's requests for additional attorney's fees and a referral to the Compliance Program for penalties are denied at this time.

6

3. A status hearing is set for **April 14, 2025, at 10:00 a.m. Central Time.** The parties must dial (615) 532-9552 or (866) 943-0025 to participate.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance might result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED December 4, 2024.**


*Kenneth M. Switzer*
_____
**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

# **APPENDIX**

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice and employee's additional issue
3. Hearing Request
4. Order Setting Expedited Hearing
5. Employee's Pre-Hearing Statement
6. Pretrial Order
7. Employer's Pre-Hearing Statement
8. Employer's Objection to Affidavit
9. Employee's Response

Exhibits
1. Affidavit of Mr. Mutters
2. Employee's Exhibits
   2a. Wage statement
   2b. Amended wage statement
   2c. Payment ledger
   2d. Dr. Debelak's records and letter about restrictions
3. Employer's Exhibits
   3a.Declaration of Devon Roberts and attachment
   3b. Declaration of Nicole Godfrey and attachments
   3c. Dr. Debelak's restriction notes
4. Affidavit of Jill Draughon (Identification only)

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on December 4, 2024.

| Name | Certified Mail | Regular mail | Email | Sent to |
|------|----------------|--------------|-------|---------|
| Jill Draughon, employee's attorney | | | X | jdraughon@hughesandcoleman.com sconner@hughesandcoleman.com |
| John Lewis, employer's attorney | | | X | john@johnlewisattorney.com |

_____
Penny Shrum
Clerk, Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

9



<u>Right to Appeal:</u>

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1.  Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
    When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3.  You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4.  After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____  ☐ Motion Order filed on _____

☐ Compensation Order filed on_____  ☐ Other Order filed on_____

issued by Judge _____.

**Statement of the Issues on Appeal**
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

**Parties**
**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*